IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CINDY SUSAN ENQUIST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-994-O-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Cindy Enquist seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. STATEMENT OF THE CASE

Plaintiff filed her applications for DIB and SSI on October 28, 2011. Her applications were denied initially March 29, 2012, and again on reconsideration August 14, 2012. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on June 27, 2013. The ALJ issued a decision finding Plaintiff not disabled on September 6, 2013. Plaintiff appealed to the Appeals Council, which denied review on October 14, 2014. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the

Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to her pleadings and testimony at the administrative hearing, Plaintiff was fifty-four years old at the time of her administrative hearing. She lived on her own but had to rely on either public transportation or friends to get her places, as her driver's license was expired. She earned a G.E.D. and received some specialized training at the Fort Worth School of Business, but did not graduate with any kind of certification. She held numerous jobs in a variety of settings. She worked as: an application processor for an insurance company; a waitress at a few different restaurants; a sales clerk at a department store; a data entry technician for a local governmental entity; a clothing tagger for a thrift store; a telemarketer for a non-profit organization; and a telemarketer for a vacation resort.

Plaintiff testified that she had to stop working because she became too ill with symptoms that ultimately led to a hysterectomy operation. Over the years she has also received treatment for fibromyalgia, degenerative disc disease and joint disease, as well as asthma. However, on appeal before the Court, Plaintiff only argues about her mental impairments, which she alleges include bipolar disorder, depression, and limitations in terms of social functioning. Plaintiff claims her mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*,

309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the

evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff presents a single issue before the Court.[1] She alleges the ALJ's RFC finding is faulty for reasons more specifically annunciated below.

### a. RFC

"RFC is what an individual can still do despite his or her limitations." S.S.R. 96-8p, 1996 WL 374184 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations. We will assess your [RFC] based on all the relevant evidence in your case record."); 20 C.F.R. § 416.945(a)(1) (same). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (internal quotation marks omitted). When there are inconsistencies in the evidence, it is the province of the ALJ to resolve the inconsistencies. 20 C.F.R. § 404.1529. For example, when the record contains incongruous opinions made by physicians, the opinion of a physician may be rejected when it is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Additionally, "the ALJ has sole responsibility for determining a claimant's disability status," so an opinion by a physician—even a treating physician—that a claimant is disabled or unable to

---

[1] As explained below, Plaintiff presents a second issue before the Court, arguing the presence of a "borderline age situation" based on her rapidly approaching 55th birthday at the time of her administrative hearing. However, the Court does not reach this issue, which is contingent upon a disposition of the first issue opposite from what the Court arrives at. *See infra* part IV.b.

work is not dispositive. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Plaintiff begins by asserting the evidence in the record suggests that she has a greater degree of mental limitation than the ALJ concluded. Initially, Plaintiff cites evidence from a January 2009 visit with James Jensen, Psy.D. Pl.'s Br. 6, 8–9. However, Plaintiff's reply brief does not contest Defendant's assertion that Dr. Jensen's visit was conducted for a prior claim for benefits, which was denied, and therefore outside the relevant period for the instant case. *See* Def.'s Br. 5, n. 2.

Plaintiff also cites evidence from a February 2012 visit with consultative examiner Keith Christie, Psy.D. Tr. 741–45. Dr. Christie interviewed and performed several mental/psychological tests on Plaintiff. Dr. Christie reported:

> Subject presented for the interview unkempt but she was cooperative. She became easily tearful during the session and said that she was sad however she reported her mood for the last couple weeks overall had been irritable. She demonstrated strong abstract ability and some capacity for analogical thinking. She stated that at times she may see shadows or hear voices whispering to her or thinking that the TV said something to her. She said these instances are not often and occur mostly when she is really pressured or in pain. She was oriented x3 with an adequate fund of information including short-term memory. Her immediate and delayed recall was normal. Attention and concentration were also good. She displayed adequate social judgment and insight.

Tr. 742. Dr. Christie went on to note that Plaintiff, "is of average or above average intelligence even given her limited formal education. Current cognitive symptoms reported on the [Cognitive Assessment Screening Test] including losing track or having difficulty with recall and comprehension were not seen on the tasks required on the mental status examination." Tr. 742. After additional, thorough findings on, *inter alia*, Plaintiffs activities of daily living, social functioning abilities, and other symptoms, Dr. Christie diagnosed Plaintiff with bipolar I disorder, post-traumatic stress disorder, and obsessive/compulsive disorder. Tr. 744. Dr. Christie then noted,

> "Although [Plaintiff] did not report significant interpersonal problems on

the job, it can be inferred from her current social functioning that this may be a significant barrier in finding work as well or in performing adequately on the job. She appears to have adequate intelligence and cognitive skills such as attention and concentration in addition to good social judgment however overall it does not appear that this subject is currently capable of obtaining gainful employment. It does not seem likely to change in the foreseeable future."

Tr. 744.

Next, Plaintiff cites evidence relating to her medication use and symptoms therefrom. Pl.'s Br. 8–13. She notes a history of medications used to treat schizophrenia, bipolar disorder, and panic disorder. *See id.* at 9, n. 3–5. She also notes the symptoms requiring, and side effects emanating from, these medications, including, "irritability, hyperactivity, frustration, and auditory/visual hallucinations." Pl.'s Br. 9. Plaintiff notes these records span several years, including the time period relevant in her appeal.

Lastly, Plaintiff cites evidence from Susan Posey, Psy.D., who reviewed the paper record and completed a mental RFC assessment checklist form on March 22, 2012. Pl.'s Br. 7. Dr. Posey opined that Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions. Tr. 771. Dr. Posey also opined that Plaintiff was moderately limited her ability to: carry out very short and simple instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 771–72.

Plaintiff alleges that all this evidence taken together undermines the ALJ's RFC finding, and was improperly considered.

First, as to Dr. Christie's findings, the record reveals the ALJ discussed these in detail. The

6

ALJ took special care to distinguish Plaintiff's subjective complaints made to Dr. Christie, results of objective tests performed by Dr. Christie, and Dr. Christie's opinion that Plaintiff was disabled. Tr. 19. As previously noted, the ultimate decision whether a claimant is disabled is a decision solely to be made by the ALJ, not by Dr. Christie. *See Moore*, 919 F.2d at 905. The ALJ properly rejected this opinion.[2] *Id.*; Tr. 19 ("The undersigned did not afford great weight to Dr. Christie's opinion regarding the claimant's ability to work.").

Next, the ALJ recounted at great length Plaintiff's history of medication. Tr. 18–20. The ALJ discussed: the particular medications Plaintiff had been prescribed (*e.g.*, Tr. 19 (noting Plaintiff's history of lithium medication)); the limiting effects these had on Plaintiff's ability to work (*e.g.*, Tr. 19 (noting Plaintiff's allegation of a panic attack due to medication); Tr. 19–20 (noting multiple Global Assessment of Functioning (GAF) scores, opined by doctors in connection with prescribed medication); and Plaintiff's history of compliance with her prescribed medication (*e.g.*, Tr. 20 (noting non-compliance with medications associated with bipolar disorder)). Thus, it is plain that the ALJ considered evidence of Plaintiff's longitudinal history with medication in connection with her ability to perform work. Plaintiff's argument that this evidence shows a greater degree of limitation than the ALJ found is unavailing.

Finally, relating to the function-by-function assessment of Plaintiff's ability to perform work-related activities, the ALJ gave proper weight to Dr. Posey's mental RFC assessment. *See* Tr. 20, 771–74. While Plaintiff complains there is fatal error in finding the "moderate" and

---

[2] The Court notes without deciding that although Plaintiff claims Dr. Christie opined Plaintiff was disabled and unable to work, the record does not necessarily reveal such. Dr. Christie's diagnosis, as previously stated, reads, "Although she did not report significant interpersonal problems on the job, it can be inferred from her current social functioning that this may be a significant barrier in finding work as well or in performing adequately on the job. . . . [I]t does not appear that this subject is currently capable of obtaining gainful employment. It does not seem likely to change in the foreseeable future." Tr. 744. Dr. Christi stopped short of saying Plaintiff was disabled, instead saying it *appeared* Plaintiff was disabled, and this did not *seem likely* to change. *Id.* Still, had Dr. Christie firmly made a finding that Plaintiff was disabled, such opinion is for the ALJ alone to make. *Moore*, 919 F.2d at 905.

"marked" limitations that the ALJ did while at the same time concluding Plaintiff could "understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for extended periods; interact appropriately with coworkers and supervisors; and respond appropriately to changes in routine work setting," Plaintiff can cite no authority to bolster her complaint. That is, Plaintiff complains that the ALJ's above-noted RFC finding was inconsistent with the "moderate" limitations found by Dr. Posey. Pl.'s Br. 13–17. Plaintiff claims these "moderate" limitations constituted "significant social functional and concentration deficits," (Pl.'s Br. 14, n. 17), which preclude performance of the jobs the ALJ found Plaintiff to be able to perform. *See* Pl.'s Br. at 14–16. For one thing, Plaintiff's assessment that the jobs she was found to be able to perform contained "significant amounts of social interaction" was based purely on her lay assessment, without citation to authority or expert support. *See* Pl.'s Br. 16. For another thing, Plaintiff fails to explain the importance of her conclusion that "moderate" limitations, as found by Dr. Posey, are "significant." *See, e.g.*, Pl.'s Br. 14–15. She cites to no case law or statutory/regulatory authority to show why the distinction of "moderate" functional limitations as "significant" is dispositive of any issue in this case. Plaintiff's argument as to the ALJ's RFC finding is unavailing here.

### b. Borderline Age Situation

Plaintiff raises a second issue before the Court. She claims that as she was within six months of her 55th birthday at the time of her administrative hearing, a "borderline age situation" was present, ultimately necessitating a different outcome in this case. However, as Plaintiff concedes, the Court would only reach this issue if it had concluded the ALJ erred in her RFC finding. Accordingly, the Court need not address any borderline age situation here.

## V. CONCLUSION

In the end, Plaintiff fails to show that the ALJ erred in her RFC finding. The ALJ performed a function-by-function assessment, *Myers*, 238 F.3d at 620, citing to and discussing, *inter alia*, Dr. Posey's functional findings. Tr. 15–16. The ALJ based her RFC finding "upon all of the relevant evidence of an individual's ability to do work-related activities." *Myers*, 238 F.3d at 620; *see* Tr. 16–20 (citing evidence spanning at least from January 12, 2009, to November 30, 2012). Where there were inconsistencies, the ALJ fulfilled her duty to resolve such, appropriately giving greater weight to objective test findings than to improper or unsupported opinions. *See, e.g.*, Tr. 19, 20; *Moore*, 919 F.2d at 905; *Greenspan*, 38 F.3d at 237. Plaintiff has failed to show the ALJ's RFC finding is not supported by substantial evidence; as such, the decision of the Commissioner is conclusive and this Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390; *Newton*, 209 F.3d at 452.

In sum, Plaintiff single issue before the Court is not availing. Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February 3, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**